```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
```

UNITED STATES OF AMERICA,

                                                                                  **MEMORANDUM AND ORDER**

        - against -                                   17-CR-404-1 (KAM)

ALBERT VELIU,

                        Defendant.

```
----------------------------------------X
```
**KIYO A. MATSUMOTO**, United States District Judge:

        Defendant Albert Veliu, who is currently serving a 108-month sentence at the Federal Correctional Institution ("FCI") Allenwood Low, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 385, Notice of Motion for Compassionate Release.) The government opposes the motion. (ECF No. 390-1, Government's Opposition to Defendant's Motion for Compassionate Release ("Gov't Opp'n").) For the reasons set forth below, Mr. Veliu's motion is respectfully **DENIED**.

## BACKGROUND

        The Court assumes familiarity with the factual circumstances of Mr. Veliu's conviction, set forth in the Probation Department's Presentence Investigation Report. (*See generally* ECF No. 306, Presentence Investigation Report ("PSR"), ¶¶ 6–53.) To summarize, Mr. Veliu's arrest, prosecution, and conviction resulted from a Drug Enforcement Administration ("DEA") sting

1

operation that uncovered an ongoing money laundering scheme devised and carried out by Messrs. Veliu, Christopher Curanovic, and Anthony Noterile, to facilitate the payment of an extortionate debt owed to Curanovic by a DEA confidential source (the "first confidential source"). (*Id.*)

Mr. Veliu laundered cash from another DEA confidential source who represented himself as an associate of the first confidential source (the "second confidential source"), in exchange for keeping a percentage of the laundered funds as a commission and another percentage as the payment of the extortionate debt owed to Curanovic by the first confidential source. (*Id.* ¶ 12.) Messrs. Veliu, Curanovic, and Noterile believed the money from the second confidential source to be proceeds of narcotics sales, based on what they were told. (*Id.* ¶ 14.)

Mr. Veliu was subsequently introduced to a third DEA confidential source (the "third confidential source") by the second confidential source, (*id.* ¶ 26), and also laundered what he believed to be proceeds of drug trafficking, on behalf of the third confidential source. (*Id.* ¶ 29.) Over the course of the investigation, the second and third confidential sources provided Mr. Veliu with approximately $800,000 in purported drug proceeds for laundering. (*Id.* ¶ 37.)

Mr. Veliu also facilitated a sale of weapons, specifically AK-47s, in Kosovo, on behalf of the third confidential source. (*Id.* ¶¶ 42–43.) The third confidential source informed Mr. Veliu that the weapons were ultimately bound for the U.S.-Mexican border for use in the cartel wars. (*Id.* ¶ 44.) The third confidential source provided Mr. Veliu with $13,500 for the purchase of fifteen AK-47s, and Mr. Veliu traveled to Kosovo to deliver the weapons to an individual he believed to be a Kosovo-based associate of the third confidential source. (*Id.* ¶¶ 46–47.) On two separate occasions, Mr. Veliu and his associates provided the third confidential source's associate, who, in reality, was an undercover Kosovar police officer, with fourteen AK-47s and one Zolja anti-tank rocket launcher equipped with one 64mm rocket. (*Id.* ¶¶ 48–49.)

On October 25, 2017, a grand jury returned a 25-count superseding indictment charging Mr. Veliu with: conspiracy to transport a destructive device and machine guns (Count 1); extortionate collection of credit conspiracy (Count 2); money laundering conspiracies (Counts 3, 5, 8, 11, 14, 17, 20); money laundering (Count 4); conspiracy to distribute marijuana (Count 22); distribution of marijuana (Count 23); and Hobbs Act extortion conspiracies (Counts 24 and 25). (*See* ECF No. 121, Superseding Indictment.)

On February 20, 2019, Mr. Veliu pleaded guilty before this Court to two counts of the Superseding Indictment: Count 1, conspiracy to transport a destructive device and machine guns, in violation of 18 U.S.C. §§ 371 and 922(a)(4), and Count 3, money laundering conspiracy, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(3)(B). (*See* ECF No. 252.)

On January 30, 2020, the Court sentenced Mr. Veliu to a total of 108 months in custody, followed by three years of supervised release on each count, to run concurrently, and a $200 special assessment. (*See* ECF No. 345, Sentencing Transcript ("Sent'g Tr."), at 42:2–44:11.) Additionally, the Court ordered Mr. Veliu to forfeit: (1) $100,000; (2) fourteen AK-47s; and (3) one Zolja anti-tank rocket launcher with one 64 mm rocket. (*See* ECF No. 343, Order of Forfeiture.)

## **LEGAL STANDARD**

The compassionate release provision, 18 U.S.C. § 3582(c)(1)(A), provides an exception to the general rule that a court may not modify a term of imprisonment once it has been imposed. A defendant must satisfy three requirements for the court to grant a motion for compassionate release. *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).

"First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting [compassionate release] from prison authorities." *Id.* In

4

particular, a defendant generally must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait until 30 days after "the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Second, a court must find that "extraordinary and compelling reasons" warrant a sentence reduction. *Id.* § 3582(c)(1)(A)(i). The passage of the First Step Act of 2018 "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "[A] district court's discretion in this area—as in all sentencing matters—is broad." *Id.* Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237-38 (quoting 28 U.S.C. § 994(t)).

Third, the court must consider "'the factors set forth in section 3553(a) to the extent that they are applicable' before it can reduce the defendant's sentence." *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Section 3553(a) factors include, among

5

others, (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct, (4) the need for the sentence imposed to protect the public from further crimes of the defendant, and (5) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *See* 18 U.S.C. § 3553(a).

"The defendant carries the burden of showing that he . . . is entitled to a sentence reduction under the statute." *United States v. Garcia*, 09-cr-330(KAM), 2021 WL 1616914, at *3 (E.D.N.Y. Apr. 26, 2021) (citation omitted).  "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Id.* (citation omitted).

**DISCUSSION**

**I.   Exhaustion**

The government asserts that because Mr. Veliu failed to resubmit his application for compassionate release to the Bureau of Prisons ("BOP") with proper documentation, as directed by the warden at FCI Allenwood Low, "there is a ground to contend that [Mr.] Veliu has not satisfied the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A)." (Gov't Opp'n at 5.)  In *United States v. Saladino*, the Second Circuit held that Section 3582(c)(1)(A)'s exhaustion requirement is not a jurisdictional limitation but rather a "claim-processing rule that may be waived or forfeited by the government."  7 F.4th 120, 121 (2d Cir. 2021).

The Circuit Court, however, has yet to address whether Section 3582(c)(1)(A) authorizes an inmate to file a motion for compassionate release before the district court after 30 days of serving his petition for release on the warden of his facility, regardless of whether the warden responds to the petition.  *See id.* at 123–24 (noting, without resolving, that some district courts have held that where "the BOP timely responds to an inmate's request for compassionate release," the inmate must satisfy the exhaustion procedure," whereas other courts "have held that the statute's 30-day waiting period authorizes the inmate's filing a motion regardless of whether the warden responds to the inmate's request for compassionate release.").

7

Here, the Court need not, and therefore does not, decide whether Mr. Veliu has actually satisfied the exhaustion requirement because, as set forth below, he has failed to satisfy the remaining two requirements for compassionate release. *See Keitt*, 21 F.4th at 73 ("[A] court may reduce a sentence under § 3582(c)(1)(A) only if three conditions are in place: administrative exhaustion (absent waiver or forfeiture by the government); satisfaction of the § 3553(a) factors; and extraordinary and compelling reasons. It follows that if a district court determines that one of those conditions is lacking, it need not address the remaining ones.") (citation omitted).

## II. Extraordinary and Compelling Reasons

Mr. Veliu asserts that his health, the recent developments in his family circumstances, "the extraordinarily harsh and inhuman conditions" of his confinement, and his rehabilitation constitute extraordinary and compelling reasons that warrant his release. (ECF No. 387, Defendant's Memorandum of Law in Support of Motion for Compassionate Release ("Def Br."), at 9–18.) Mr. Veliu argues that the Court should also take into consideration that the laundered funds and the weapons he procured did not fall into wrong hands and that his exposure was substantially increased by the government's conduct. (*Id.* at 18.)

8

With regard to his health, Mr. Veliu contends that his preexisting physical health conditions—obesity and Type 2 diabetes—increase his risk of developing serious COVID-19 symptoms. (*Id.* 10–11.) Further, Mr. Veliu suffers from anxiety which, he argues, was "triggered" by spending six months in the Special Housing Unit for "no reason," and is likely exacerbated by the harsh conditions of confinement, including the lockdowns. (*Id.* at 11–13.) Finally, Mr. Veliu fractured his foot in October 2020 while at FCI Fort Dix. (Gov't Opp'n at 7.)

In addition, Mr. Veliu asserts that his family is suffering "unprecedented calamities." (Def. Br. at 14.) Specifically, according to Mr. Veliu, his wife, who is responsible for supporting the family financially in his absence, was recently diagnosed with thyroid cancer and underwent surgery. (*Id.* at 15–16; ECF No. 393, Reply Memorandum of Law in Support of Motion for Compassionate Release ("Def. Reply"), at 7.) Mr. Veliu also claims that the education of his minor son, who has autism, has been impaired, due to the lack of English proficiency of his wife and mother who cannot assist with his son's schoolwork. (Def. Br. at 15.) Further, Mr. Veliu states that because his wife works 7 days a week, his mother, who suffers from depression, Lumbar Disc Derangement, and lupus, is left with caring for his son but is unable to provide the emotional support that he needs. (*Id.*)

9

The government asserts that Mr. Veliu has not presented any "extraordinary and compelling reasons" warranting a sentence reduction because: (1) Mr. Veliu, who is 39 years old, does not suffer from any terminal illness or an impairment that substantially diminishes his ability to provide self-care in the correctional facility; (2) Mr. Veliu's wife and mother, though having difficulty raising his minor son, are not incapacitated as caregivers; (3) the risk posed by COVID-19 is mitigated by Mr. Veliu's young age, vaccinations, and the protective measures taken by the BOP to curb the spread of the disease in its facilities; and (4) rehabilitation, alone, is not considered an extraordinary and compelling reason. (Gov't Opp'n at 6–9.)

The Court finds that the reasons proffered by Mr. Veliu, considered separately or together, are not "extraordinary and compelling" and thus do not warrant his release. As for Mr. Veliu's health conditions, his obesity, Type 2 diabetes, anxiety, and fractured foot, his submissions, notably, do not provide any detail as to the severity of each condition, nor does Mr. Veliu contend that he is unable to receive adequate treatment for these conditions at the facility.[1] And though obesity and diabetes have been identified by the Center for Disease Control as conditions that likely increase one's risk of a severe outcome from COVID-

---

[1] The Court had taken Mr. Veliu's obesity and diabetes into account in determining his sentence. (PSR ¶ 106.)

10

19, Mr. Veliu is 39 years old and is fully vaccinated as of March of this year. "[T]he risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated." *United States v. Jones*, No. 17-cr-214(CM), 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021). *See United States v. Johnson*, No. 94-cr-631(PGG), 2021 WL 640054, at *5 (S.D.N.Y. Feb. 18, 2021) (finding no "extraordinary and compelling reasons" where inmate suffering from obesity had received first dose of vaccine and would receive second dose in the coming weeks, as "[t]he Defendant's vaccination mitigates the risks that he would otherwise face from the COVID-19 virus"); *United States v. Laguerra*, No. 18-cr-0678(JS), 2022 WL 173111, at *3 (E.D.N.Y. Jan. 19, 2022) ("Courts have consistently denied compassionate release when the defendant is fully vaccinated, even when other health conditions are present.") (citation omitted).

Furthermore, Mr. Veliu is incarcerated at FCI Allenwood Low, a facility that presently has no inmate or staff positive cases. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed July 6, 2022). To date, 2,188 of the approximately 2,924 inmates at the Federal Correctional Complex, Allenwood (1,041 inmates at FCI Allenwood Low, 1,258 inmates at FCI Allenwood Medium, and 623 inmates at United States Penitentiary Allenwood) have been fully inoculated.

11

(*Id.*)[2]  Accordingly, Mr. Veliu's health conditions and the risk of COVID-19 do not amount to extraordinary and compelling reasons to grant him compassionate release.

Similarly, the circumstances of Mr. Veliu's family, though very sympathetic and unfortunate, do not warrant his release.  In his Reply Memorandum of Law, Mr. Veliu states that his wife underwent cancer surgery, which appears to have been successful, and has returned to work.  (Def. Reply at 7.)  And though the Court by no means intends to downplay the physical and emotional hardships experienced by Mr. Veliu's wife, son, and mother as a result of the collateral consequences of Mr. Veliu's incarceration, it is nonetheless the case that his wife and mother remain capable of acting as his son's caretakers.  *See United States v. Vailes*, No. 16-cr-297(AMD), 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020) (denying motion for compassionate release where defendant's spouse was struggling to care for their children and his ailing father); *United States v. Akrusissam*, No. 15-CR-113(EAW), 2021 WL 4927355, at *2 (W.D.N.Y. Oct. 22, 2021) (denying

---

[2] Mr. Veliu argues that because the BOP website states that there are currently "0" pending tests at FCI Allenwood Low, "there is no way of knowing" whether the number of active cases reported on the website is truly accurate. (Def. Br. at 6.)  Based on the Court's review of the website, it appears that the number of active COVID-19 cases in BOP facilities, broken down by facility, is updated daily.  Moreover, even if the number of active cases is not updated in real-time and is not perfectly accurate, given Mr. Veliu's vaccination status, the BOP's efforts to prevent and contain COVID-19 infection at its facilities, and the full inoculation of approximately 75% of the inmate population at the Federal Correctional Complex, Allenwood, the Court finds that the conditions at FCI Allenwood Low do not warrant a sentence reduction.

12

motion for compassionate release where defendant claimed that his wife was to unable to care for their six minor children due to her medical conditions, finding that defendant failed to establish that his wife was incapacitated and unable to care for their children, and that no other person was available to assist her).

Additionally, though not mentioned in Mr. Veliu's submissions, it appears that Mr. Veliu's younger brother, Alban Veliu ("Alban"), would be able to assist with the care of Mr. Veliu's young son. Alban, who was prosecuted for his participation in the same money laundering scheme, pleaded guilty to Count 21 of the Superseding Indictment, money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and was sentenced to a 2-year probationary sentence. (ECF No. 321, Judgment as to Alban Veliu.) At the time of the filing of the PSR, October 2, 2019, "Alban Veliu reside[d] with Albert Veliu, their mother, and Albert Veliu's wife in Staten Island, New York." (PSR ¶ 33.) Even if Alban no longer resides with Mr. Veliu, there is no evidence that he could not assist with Mr. Veliu's family if necessary.

Nor do the conditions of confinement during the pandemic give rise to extraordinary and compelling circumstances. Although the Court acknowledges that "the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary

13

and compelling." *United States v. Johnson*, No. 18-cr-907(PAC), 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021) (citing *United States v. Lewis*, No. 10-cr-392(CS), 2021 WL 1873154, at *2 (S.D.N.Y. May 10, 2021); *United States v. Mateo*, No. 17-cr-305(NSR), 2021 WL 2480171, at *2 (S.D.N.Y. June 16, 2021)).[3]

Likewise, Mr. Veliu's rehabilitation is not sufficient to meet the required standard. Rehabilitation may be considered by courts in combination with other factors to determine whether there are extraordinary and compelling reasons for compassionate release, *see United States v. Torres*, 464 F. Supp. 3d 651, 661 (S.D.N.Y. 2020), though "'[r]ehabilitation . . . *alone* [cannot] be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d 228, 237-38 (quoting 28 U.S.C. § 994(t)). Here, Mr. Veliu states that he has a single infraction on his disciplinary record since his June 2017 remand, has been continuously employed, and participated in 17 courses and completed 234 hours of programming in five years. (Def. Br. at 6, 17.) Mr. Veliu's good behavior and efforts at rehabilitation are commendable; however, model prison conduct is expected. *See United States v. Garcia*, No. 19-cr-210-1(CS), 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022)

---

[3] Mr. Veliu also contends that the Court should consider that he was placed in the Special Housing Unit for six months, "even though he was never violated or charged with an infraction." (Def. Br. at 5.) The government does not address in its response Mr. Veliu's claim that he was confined in the SHU for "no reason." (*Id.* at 13.) Mr. Veliu's medical records state that he was on administrative detention status when he was placed in the SHU. (*See* ECF No. 390-2.)

14

("Maintaining good conduct in prison is not uncommon, and indeed is expected.") (citation omitted).

Finally, the Court is unpersuaded by Mr. Veliu's argument that the fact that "all the money to be laundered was sting money" and the weapons he procured "did not reach . . . wrongful hands" should weigh in favor of his release. (Def. Br. at 3–4.) At the time he committed the offense of conviction, Mr. Veliu had no reason to know he was laundering sting money or that the deadly weapons were not actually bound for narcotics trafficking cartels. Mr. Veliu asserts that the DEA sting operation was "set in motion by events external to [him] and initially not involving him at all," and "had the Government not initiated the offense conduct [he] undoubtedly would have continued making an honest living." (*Id.*) His assertions raise questions whether Mr. Veliu, in fact, takes full responsibility for his criminal conduct. Irrespective of the DEA investigation having originated from the extortionate debt owed to Curanovic and Mr. Veliu's offensive conduct arising from the sting operation, he orchestrated the money laundering scheme as a key player, profiting more than any of his co-defendants, and intentionally laundered funds that he believed to be proceeds of narcotics trafficking. Further, he procured weapons for the third confidential source, believing that they would be used in the cartel wars. That the money laundered turned out to

15

be DEA funds and that the weapons "did not reach . . . wrongful hands" does not diminish his *mens rea* and culpability.

Accordingly, the Court concludes that the circumstances presented by Mr. Veliu do not, individually or collectively, amount to extraordinary and compelling circumstances.

### III. Section 3553(a) Factors

The Court also finds that the relevant Section 3553(a) factors weigh against granting a compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). As this Court noted during the sentencing, Mr. Veliu's offenses are "at the very, very serious end of most serious offenses." (Sent'g Tr. at 36:22–24.) Mr. Veliu has served approximately 60 months, or less than 60%, of his 108-month sentence, which, as Mr. Veliu's counsel recognizes, was significantly below the Guideline range of 300 months.

Releasing after 60 months a defendant who participated in drug-related money laundering conspiracies and a global weapons trafficking conspiracy would undermine several of the purposes of sentencing. It would not sufficiently address the seriousness of the offenses or promote respect for the law, would not result in just punishment, would introduce unwarranted sentencing disparities, and would dilute the deterrent effect of the sentence. *See United States v. Keitt*, 20-cr-66(AT), 2020 WL 7404486, at *2 (S.D.N.Y. Dec. 17, 2020) ("[A] substantial sentence was required to provide just punishment and reflect the seriousness of the

16

offense. Granting release so early in the term of incarceration would undercut those interests."). Though the Court acknowledges that there are certain Section 3553(a) considerations that weigh in Mr. Veliu's favor, such as that Mr. Veliu is individually deterred and, in light of his positive efforts at post-conviction rehabilitation, is not likely to present a danger to the public, such considerations are insufficient to override the considerations that weigh against his release.

## CONCLUSION

For the foregoing reasons, Mr. Veliu's motion for compassionate release is respectfully **DENIED**.

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated: July 6, 2022
Brooklyn, New York